UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN S., <br><br>         Plaintiff, <br><br>    v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security <br> Administration, <br><br>         Defendant. | Case No.  2:24-cv-03650-SP <br><br><br> **MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION

On May 2, 2024, plaintiff Marvin S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of an application for a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the administrative law judge ("ALJ") properly evaluated plaintiff's subjective testimony regarding his sleep

1

difficulties; and (2) whether the ALJ improperly evaluated the lay testimony of plaintiff's friend. Plaintiff's Brief ("P. Mem.") at 4-13; *see* Defendant's Brief ("D. Mem.") at 2-10.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the administrative law judge, the court concludes that, as detailed herein, the ALJ properly considered both plaintiff's subjective testimony regarding his sleep difficulties and the lay testimony. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 42 years old on his alleged disability onset date, February 5, 2017. AR at 107. Plaintiff has a bachelor's degree in film production and has past relevant work as an insurance office manager. AR at 80-81, 98-99.

On December 17, 2020, plaintiff filed an application for a period of disability and DIB due to high blood pressure, epilepsy, mental health problems, sleep apnea, panic attacks, insomnia, migraines, anxiety, depression, and multiple suicide attempts. AR at 108. The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. AR at 107-26, 128-46, 194-95.

On April 26, 2022, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 76-106. The ALJ also heard testimony from Sandra Fioretti, a vocational expert. AR at 98-104. On June 27, 2022, the ALJ denied plaintiff's claim for benefits. AR at 148-64. Plaintiff appealed the ALJ's decision to the Appeals Council, which reversed and remanded the matter to the ALJ. AR at 170-75, 274-76.

On September 20, 2023, plaintiff, still represented by counsel, again appeared and testified at a hearing before the ALJ. AR at 45-75. The ALJ also heard testimony from Scott Nielson, a vocation expert. AR at 68-72. On December 6, 2023, the ALJ again denied plaintiff's claim for benefits. AR at 23-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from February 5, 2017, the alleged onset date, through December 31, 2022, the date last insured. AR at 26.

At step two, the ALJ found plaintiff suffered from the severe impairments of epilepsy, anxiety, and depression. AR at 27.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 28.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"), and determined plaintiff could perform a full range of work at all exertional levels, with the nonexertional limitations that plaintiff: cannot climb ladders, ropes, or scaffolds; cannot have exposure to dangerous moving machinery or unprotected heights; is limited to simple, routine tasks and simple work-related decisions; can occasionally manage changes in his work setting; is limited to occasional decision-making; and can have contact with supervisors and coworkers, but no contact with the general public. AR at 30.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a manager of an insurance office. AR at 34-35.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including a cleaner II, lab equipment cleaner, and hand packager. AR at 35-36. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 36.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

//

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## **DISCUSSION**

**A.   The ALJ Properly Considered Plaintiff's Testimony Regarding His Sleep Problems**

Plaintiff argues the ALJ improperly rejected his subjective symptom testimony. P. Mem. at 4-9. Specifically, plaintiff contends the ALJ failed to adequately discuss his

sleep testimony and failed to provide clear and convincing reasons to reject his testimony regarding his sleep difficulties. *Id.*

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.[1] In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit his ability to perform work-related activities. *Id*.

---

[1] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

      In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

      Here, at the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms. AR at 32. At the second step, the ALJ concluded plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent with the claimant's treatment regimen, the objective clinical findings, and the claimant's activities of daily living." *Id.*

      Although the ALJ provided a detailed explanation of her reasons for discounting much of plaintiff's testimony, plaintiff focuses only on the ALJ's rejection of his testimony regarding his difficulty sleeping. *See* AR at 32-33; P. Mem. at 4-13. In her discussion of how she arrived at plaintiff's RFC, the ALJ recounts plaintiff's testimony regarding his sleep problems and fatigue, but does so mainly as part of her evaluation of all of plaintiff's mental impairments. AR at 32-33. Plaintiff argues the ALJ's limited statements about plaintiff's sleep difficulties fail to provide "any articulations what so ever" as to how his sleep testimony was unsupported by the evidence of the record. P. Mem. at 5-6. But plaintiff disregards the ALJ's discussion of plaintiff's sleep problems elsewhere in the decision, and the court finds the ALJ's explanation is sufficiently clear for the court to evaluate. The question is the extent to which the three reasons stated by

the ALJ for discounting plaintiff's testimony in general apply to his testimony about his sleep difficulties, and whether those reasons are clear and convincing.

### 1. Inconsistency With Plaintiff's Treatment Regimen

The ALJ first reasoned plaintiff's testimony was inconsistent with his treatment regimen. AR at 32-33. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Moreover, a plaintiff's "lack of compliance with his treatment suggests [his] symptoms may not have been as limiting as []he alleged." *Busby v. Berryhill*, 2018 WL 1806183, at *10 (E.D. Cal. Apr. 17, 2018); *see also Cohn v. Berryhill*, 2017 WL 4772398, at *4 (C.D. Cal. Oct. 20, 2017) (holding plaintiff's "unexplained failures to take prescribed . . . medication on a regular basis" constitutes a clear and convincing reason to discount his testimony).

Although the ALJ does not discuss plaintiff's treatments for his sleep difficulties when examining his testimony during the RFC discussion, the ALJ did discuss plaintiff's treatment for sleep apnea at step two. AR at 27. The ALJ states plaintiff's sleep apnea was "treated conservatively," with a prescription for a continuous positive airway pressure ("CPAP") machine, but noted plaintiff was inconsistent in his use of the CPAP. *Id.* Indeed, several medical notes dating back to May 2021 state plaintiff indicated he was not using his CPAP as prescribed. *See e.g.* AR at 1214, 3154, 3216, 3222, 3246, 3260. The ALJ found plaintiff's failure to make use of a device intended to help him sleep was "inconsistent with the severity of his allegations." AR at 27. Thus, plaintiff's noncompliance with his conservative sleep apnea treatment regimen constitutes a clear and convincing reason to discount his testimony regarding the severity of his sleep problems.

### 2. Inconsistency With the Objective Clinical Findings

The ALJ next reasoned plaintiff's subjective symptom testimony is inconsistent with the objective clinical findings contained in plaintiff's medical records. AR at 32;

*see Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (inconsistency with the medical evidence may undercut a claimant's testimony).

Here, the ALJ again did not discuss the discrepancies between plaintiff's testimony and the objective medical evidence in her RFC discussion, but did discuss these differences in her evaluation of plaintiff's sleep difficulties at step two. *See* AR at 27. In considering the severity of plaintiff's sleep apnea, the ALJ pointed to plaintiff's records that indicated his "[p]hysical examinations revealed no focal deficits and were largely within normal limits." AR at 27. Indeed, plaintiff's medical records consistently report plaintiff was alert and oriented to his surroundings and lacked any focal neurological deficits. *See e.g.,* AR at 710, 744, 1243, 1382, 1532, 1591, 1605, 1715, 1843, 1921, 2881, 2936, 3373. Nevertheless, the ALJ also recognized plaintiff's scores on the Epworth Sleepiness Scale, which ranged from 16 to 22 out of a possible 24. AR at 27; *see* AR at 2510, 2518, 2692. Moreover, at least one physician stated plaintiff suffers from "very severe excessive daytime sleepiness which is not due to sleep apnea." AR at 2501.

It is not clear to the court that a general orientation to one's surroundings or a lack of focal neurological deficits are necessarily inconsistent with plaintiff's claims of fatigue and sleepiness. Given plaintiff's consistently high scores on the Epworth Sleepiness Scale and persistent reports of difficulty sleeping (*see e.g.,* AR at 1669, 1703, 2588, 2655, 3246), the court concludes his testimony was not inconsistent with the objective medical evidence. Accordingly, this was not a clear and convincing reason to discount his subjective symptom testimony.

### 3. **Inconsistency With Plaintiff's Activities of Daily Living**

Lastly, the ALJ found plaintiff's activities of daily living were inconsistent with his reported symptoms generally. AR at 32-33. Inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

With respect to plaintiff's non-physical impairments, the ALJ noted several of plaintiff's daily activities, including shopping, using public transportation, and managing property, and concluded these activities were inconsistent with plaintiff's reports of extreme anxiety. AR at 33. But the ALJ nowhere stated these activities were inconsistent with plaintiff's testimony regarding his difficulty sleeping. Accordingly, it does not appear the ALJ relied on plaintiff's daily activities as a reason to reject his testimony regarding his difficulty sleeping.

In sum, the ALJ put forth two reasons for discounting plaintiff's subjective symptom testimony regarding his sleep issues. One of these, the objective medical evidence, was not entirely clear and convincing. But the other reason the ALJ gave – plaintiff's non-compliance with his prescribed treatment – was a clear and convincing reason to discount his testimony regarding the severity of his sleep problems. Particularly in the context of the ALJ's overall evaluation of plaintiff's subjective symptom testimony, this was sufficient to show the ALJ properly considered plaintiff's testimony regarding his sleep problems. Thus, the ALJ properly evaluated plaintiff's subjective symptom testimony.

**B.     The ALJ Properly Considered the Lay Testimony of Paulie Aguila**

Plaintiff also argues the ALJ failed to properly consider the Third-Party Function Report submitted by his friend, Paulie Aguila. P. Mem. at 9-13. Plaintiff argues the ALJ erred by failing to provide "any sufficient rationale to reject the lay evidence." *Id.* at 13.

Lay witness testimony falls in the category of "evidence from nonmedical sources," which ALJs consider. *See* 20 C.F.R. § 404.1513(a)(4). Under the prior regulations, ALJs could only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But the Social Security Administration revised its regulations for all claims filed on or after March 27, 2017. These revised regulations require ALJs to consider lay evidence, but do not require ALJs to articulate how they considered the evidence using the same criteria as for medical sources. 20 C.F.R. § 404.1520c(d) ("We

are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").

It remains an unsettled question as to whether or not the "germane reasons" standard survived the enactment of the revised regulations. One unpublished Ninth Circuit decision notes "[i]t is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022). But another unpublished Ninth Circuit opinion decided after *Fryer* suggested the previous and more demanding "germane reasons" standard may still apply. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) ("We have not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses."). Earlier this year it seemed the Ninth Circuit had resolved the question in *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025); however, the Ninth Circuit withdrew and vacated that decision shortly after issuing it. *Hudnall v. Dukek*, 133 F.4th 968 (9th Cir. 2025).

Here, even if the germane reasons standard survives, the ALJ did not err. The ALJ noted the Third-Party Adult Function Report completed by plaintiff's friend Aguila was "consistent with" the information provided by plaintiff himself. AR at 31. The ALJ also recognized that Aguila provided additional information regarding plaintiff's daily activities, which the ALJ stated she took into account in assessing plaintiff's RFC. *Id.* But plaintiff contends the ALJ plainly rejected at least one aspect of Aguila's report, namely, Aguila's concluding remark that he "think[s] [plaintiff needs around that clock care." P. Mem. At 10; AR at 466. This opinion by Aguilar follows his observations that plaintiff has difficulty holding conversations, always complains about his migraines, and wants to be around people just in case he has a seizure. *Id.*

As the ALJ noted, Aguilar's report is largely consistent with plaintiff's own report, including plaintiff's reports of his constant anxiety that he may have a seizure and that it is hard for him to have long conversations. *Compare* AR at 459-66 *with* AR at 471-80.

Although the ALJ did not expressly state that she discounted Aguila's Third Party Function Report, because the ALJ gave clear and convincing reasons for discounting plaintiff's testimony and Aguila's statements were largely similar to plaintiff's, the ALJ's reasons for discounting plaintiff's testimony would apply equally to Aguila's report. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ gave clear and convincing reasons to reject plaintiff's testimony, "it follows that the ALJ also gave germane reasons" for rejecting similar lay testimony). Aguila's offered opinion that plaintiff needs around the clock care essentially follows from his other observations in his Third Party Function Report regarding plaintiff's daily activities and mental state that overlap with plaintiff's own testimony. To the extent plaintiff suggests Aguila's opinion that plaintiff needs around the clock care is something more than that – namely, a medical opinion that plaintiff actually requires such care – that is not competent lay testimony the ALJ was required to consider. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witnesses may testify to a claimant's symptoms, but "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence").

For these reasons, the ALJ did not err with respect to the evaluation of Paulie Aguila's lay testimony.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: September 29, 2025

SHERI PYM
United States Magistrate Judge